HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AR PILLOW INC., et al.,

        Plaintiffs,

v.

ANNETTE COTTRELL,

        Defendant.

CASE NO. C11-1962 RAJ

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This matter comes before the court on plaintiffs AR Pillow, Inc.'s and Elizabeth Goutevenier's motion for temporary restraining order, which the court has construed as a motion for preliminary injunction. Dkt. # 13. Plaintiffs seek an order preventing defendant Annette Cottrell from:

> (1) Any and all use of plaintiffs' registered trademark "AR Pillow," including use on Defendant's website, in her advertising or promotional materials, embedded in meta-tags directing traffic to her website or any other use whatsoever, (2) making communication of any type with potential or actual customers and/or others in the infant acid reflux treatment and/or prevention industry about AR Pillow, Elizabeth Goutevenier, or the pending litigation, and/or (3) transferring, alienating, leveraging,

|   |   |
|---|---|
| 1 | liquidating, or otherwise rendering unavailable such assets as would tend to render judgment in this matter ineffectual.[1] |
| 2 | Dkt. # 13 at 2.  Cottrell argues that plaintiffs have failed to meet their heavy burden on |
| 3 | preliminary injunction because (1) truthful product comparisons are permissible, (2) the |

Dkt. # 13 at 2.  Cottrell argues that plaintiffs have failed to meet their heavy burden on preliminary injunction because (1) truthful product comparisons are permissible, (2) the alleged "Google" listing is not actionable, and (3) the product comparison is not defamatory.  Dkt. # 20.  Having considered the memoranda, exhibits, and the record herein, the court DENIES plaintiffs' motion for preliminary injunction.[2]

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008).  An injunction will not issue if the moving party merely shows a possibility of some remote future injury or a conjectural or hypothetical injury.  *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).

**A.     Likelihood of Success on the Merits**

    1.     <u>Trademark Infringement</u>

To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, plaintiffs must prove that that they have a protectable ownership interest in the mark and that the defendant's use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).  Cottrell does not contest ownership of the mark AR Pillow.  Accordingly, the

---

[1] Plaintiffs have not provided any legal or factual authority that would support imposing a preliminary injunction on the second and third categories.

[2] The motion may be decided on the papers submitted.  Accordingly, the request for oral argument is DENIED.

court must assess whether Cottrell's use of the mark is likely to cause consumer confusion.

The parties agree that the Ninth Circuit uses the *Sleekcraft* factors in a flexible manner to analyze the likelihood of consumer confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* at 1145 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)). The Ninth Circuit has refused to adhere to a rigid prioritization of the three factors most often analyzed in the context of Internet domain names. *Id.* at 1146 (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 n.16 (9th Cir. 1999): (1) the similarity of the marks, (2) relatedness of the goods and services offered, and (3) simultaneous use of the Internet as a marketing channel). Rather, in determining the proper inquiry for a particular trademark infringement claim, this court must adhere to two long stated principles: "the *Sleekcraft* factors (1) are non-exhaustive, and (2) should be applied flexibly, particularly in the context of Internet commerce." *Id.* at 1149. "Finally, because the *sine qua non* of trademark infringement is consumer confusion, when we examine initial interest confusion, the owner of the mark must demonstrate likely confusion, not mere diversion." *Id.*

The court notes that this is not a typical domain name case.[3] The domain names have no similarity here: plaintiffs' domain name is http://naturalrefluxrelief.com/shop,

---

[3] The cases cited by plaintiffs are distinguishable for this reason. In *Brookfield*, the court found that the allegedly infringing mark, the domain name moviebuff.com, was essentially identical to the trademark "MovieBuff." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999). In *Suarez*, the court found that the allegedly infringing domain name was largely identical to the trademarks. *Suarez Corp. Indus. v. Earthwise Tech., Inc.*, 636 F. Supp. 2d 1139, 1145 (W.D. Wash. 2008). Both of these cases involved a domain name that contained allegedly infringing trademarks. That is simply not the case here.

and defendant's domain name is pollywogbaby.com. Additionally, the trademarked term "AR Pillow" is noticeably absent from defendant's domain name. Rather, plaintiffs complain that defendant's use of the term AR Pillow in the content of her website and in metatags violate the Lanham Act. In response to the court's minute order (Dkt. # 33), plaintiffs concede that "[A]s of February 28, defendant has removed AR Pillow references from the metatags and the online store." Dkt. # 34 (Goutevenier Decl.) ¶ 3.b. However, plaintiffs claim that defendant "still maintains AR Pillow references without permission on her blog – the Burp Rag." *Id.* Plaintiffs have not provided the court with any screen shots, or other evidence, of the allegedly improper use of AR Pillow on defendant's blog.[4] Additionally, Google no longer uses metatags to determine its results lists, and, instead, relies on its own algorithms to find websites. *Network Automation*, 638 F.3d at 1146 n.3; Google Webmaster Central Blog, http://www.googlewebmastercentral.blogspot.com/2009/09/google-does-not-use-keywords-meta-tag.html (last visited February 22, 2012). The court finds that because plaintiffs have not provided the court with evidence of defendant's alleged use of AR Pillow in metatags, it may not form the basis for preliminary injunction. Accordingly, the court will only address plaintiffs' first argument regarding defendant's use of the term AR Pillow in the content of her website, polywogbaby.com.

    a. *Strength of Mark*

The stronger a mark – the more likely it is to be remembered and associated in the public mind with the mark's owner – the greater the protection it is accorded by

---

[4] The court notes that plaintiffs raise defendant's blog for the first time after the briefing schedule closed, despite apparently being aware of its existence at the time plaintiffs file this motion. *See* Dkt. # 34-1 (Ex. 1 to Goutevenier Decl.). Given the lack of evidence and argument regarding defendant's blog, the court will not address it at this time. Should plaintiffs believe they are entitled to a preliminary injunction regarding defendant's alleged use of AR Pillow on her blog site, the court encourages the parties to discuss a possible resolution, including the possibility of an agreement similar to defendant's stipulation in response to the court's Minute Order. *See* Dkt. # 35.

trademark laws. *Network Automation*, 638 F.3d at 1149. A user searching for a distinctive term is more likely to be looking for a particular product, and could be more susceptible to confusion. *Id.* Federal trademark registration alone may be sufficient in appropriate cases to satisfy a determination of distinctiveness. *Id.*

Consumers searching for the term AR Pillow, which is both the product name and registered trademark, are presumably looking for the specific product, and not a general category of goods. The term AR Pillow is therefore inherently distinct, and the first factor weighs in favor of plaintiffs.

### b. *Proximity of the Goods*

Related goods are generally more likely than unrelated goods to confuse the public as the producers of the goods. *Network Automation*, 638 F.3d at 1150. Both parties produce products to alleviate infant acid reflux. Accordingly, this factor favors plaintiffs.

### c. *Similarity of the Marks*

The more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion. *Network Automation*, 638 F.3d at 1150. Where the two marks are entirely dissimilar, there is no likelihood of confusion. *Id.* Similarity of the marks is tested on three levels: sight, sound, and meaning. Each must be considered as they are encountered in the market-place." *Id.* However, such "an inquiry is impossible here where the consumer does not confront two distinct trademarks." *Id.* at 1151. Here, the only mark identified by plaintiffs is defendant's use of AR Pillow in the web content. Since the court cannot examine two distinct marks, and there is no evidence in the record that use of the term AR Pillow in Google or other search engine currently leads to defendant's website, this factor weighs in favor of defendant. *See id.*

### d. *Evidence of Actual Confusion*

A showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion. *Network Automation*, 638 F.3d at 1151.

Here, plaintiffs argue that there is evidence that at least one customer was actually confused by defendant's use of the mark on her website. Dkt. # 26 at 4. Plaintiffs allege that they "received a call from a customer seeking to cancel an order for an AR Pillow and affiliated products . . . because she had learned unfavorable information about AR Pillow from pollywogbaby.com." Dkt. # 1, Complaint ¶ 1. Nothing in this allegation suggests that the customer was confused. Rather, it suggests that she was not confused because she knew that AR Pillow was different from pollywogbaby.com. Receiving unfavorable information about a product is not the same as consumer confusion. Nevertheless, the importance of this factor is diminished at the preliminary injunction stage of the proceedings. *Network Automation*, 638 F.3d at 1151. Accordingly, this factor is neutral.

    e. *Marketing Channels*

Convergent marketing channels increase the likelihood of confusion. *Network Automation*, 638 F.3d at 1151. However, the "shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Id*. Here, both parties advertise on the Internet. This factor is neutral.

    f. *Type of Goods and Degree of Care*

Low consumer care increases the likelihood of confusion. *Network Automation*, 638 F.3d at 1152. "In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. . . . When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely." *Id.* (internal quotations omitted). "Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Id.* The Ninth Circuit has acknowledged that the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace. *Id.* (citing *Toyota Motor Sales v. Tabari*, 610 F.3d 1171, 1179 (9th Cir. 2010) which vacated a preliminary

injunction that prohibited a pair of automobile brokers from using Toyota's "Lexus" mark in their domain names). The Ninth Circuit reasoned:

> [I]n the age of FIOS, cable modems, DSL and T1 lines, reasonable, prudent and experienced internet consumers are accustomed to such exploration by trial and error. They skip from site to site, ready to hit the back button whenever they're not satisfied with a site's contents. They fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary. Outside the special case of . . . domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page – if then.

*Id.* at 1152-53 (quoting *Toyota Motor Sales v. Tabari*, 610 F.3d 1171, 1179 (9th Cir. 2010)).

Here, defendant's domain name does not "actively claim affiliation" with AR Pillow or plaintiffs. Accordingly, this factor weighs in defendant's favor.

### g. *Defendant's Intent*

When the alleged infringer knowingly adopts a mark similar to another's, courts presume that defendants can accomplish their purpose that the public will be deceived. *Network Automation*, 638 F.3d at 1153. However, liability for infringement may not be imposed for using a registered trademark in connection with truthful comparative advertising. *Id.*

Cottrell argues that defendant's website simply provided a truthful product comparison between AR Pillow and two other similar foam wedge products. Dkt. # 20 at 3-4. Plaintiffs dispute that the comparison was truthful. Dkt. # 26 at 5-6.

The content of defendant's website provided:

Baby AR Pillow – Acid Reflux Pillow for Baby

The AR pillow has it's [sic] harness at the base of the wedge so your baby's head and back rest on the wedge but his bottom and legs are actually on the crib mattress. Because of this he can **only** be on his back in the Baby AR Pillow. All three wedges are 30 degree wedges but your baby's legs will be

> on the same plane as his body with the Tucker Wedge and RESQ wedge as opposed to being flexed or bent on the AR Pillow. For babies with severe reflux the legs should not be flexed because that can increase refluxing. Leg flexing will also decrease oxygenation so if you have a preemie or baby with aspirational concerns be sure and get a Tucker wedge or RESQ wedge. Both the Tucker and the RESQ wedge will put your baby in a secure upright position and help reduce painful night wakings.

Dkt. # 1-2 (Ex. 2 to Compl., emphasis added).

Plaintiffs have not provided evidence to support their claim that "some babies can be placed on the AR Pillow with straight legs; therefore a broad statement that all babies are only capable of being situated with bent legs is false." Nevertheless, at this early stage of litigation, the court is unable to make a finding as to the truthfulness of the disputed statement without the benefit of discovery.[5]

### h. Likelihood of Expansion of Product Lines

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Network Automation*, 638 F.3d at 1153 (quotations omitted). "When goods are closely related, any expansion is likely to result in direct competition." *Id.* "Where two companies are direct competitors, this factor is unimportant." *Id.* Here, the parties are direct competitors. Accordingly, this factor is not important.

### i. Other Relevant Factors

The court notes that the only evidence in the record that www.pollywogbaby.com came up in a Google search of "AR Pillow Trademark"[6] is Exhibit 1 to the Complaint. Dkt. # 1-1 (Nov. 15, 2011). Consumers who search for AR Pillow today are not

---

[5] The complaint alleges that a "premature (preemie) baby can be moved up on the wedge with the AR Pillow such that there is no required bending of the legs or waist." Dkt. # 1 ¶13.

[6] The court notes that it appears the search term used for Exhibit 1 was "AR Pillow Trademark," and not "AR Pillow." The court notes that neither of these search terms currently displays defendant's website.

presented with defendant's website in the rankings, or the content on the website that claimed that the AR Pillow required babies to bend their legs. Plaintiffs claim that Cottrell "is free to re-post defamatory content about the AR Pillow during the pendency of this lawsuit." Dkt. # 26 at 5. However, a possibility of some remote future injury is not grounds for an injunction. *Park Village*, 636 F.3d at 1160. Here, defendant has represented that she believes she has removed all reference to AR Pillow from her website and website source code, and stipulated that she will not use the language plaintiffs claim to be false on her website in the future. Dkt. # 35.

Additionally, several courts have found that no reasonable consumer searching for a trademark would be confused in a similar scenario because the content of the website was critical of that trademark. *See e.g.*, *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307 (9th Cir. 1992) ("Much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark."); *Lamparello v. Falwell*, 420 F.3d 309, 320 (4th Cir. 2005) ("markholder cannot 'shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct.'") (quoting *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 462 (4th Cir. 2000)).

On balance, the court finds that the *Sleekcraft* factors and other factors considered by the court do not support a likelihood of success on the merits of plaintiffs' trademark infringement claim.

2. <u>Defamation</u>

Defendant argues that there is nothing to enjoin since defendant removed the product comparison from her website when plaintiffs sued. Dkt. # 20 at 6. Plaintiffs respond that the "fact that Cottrell has removed statements about the AR Pillow from her website does not change this because absent an injunction, she is free to re-post defamatory content about the AR Pillow during the pendency of this lawsuit." Dkt. # 26

at 5. As previously stated, a possibility of some remote future injury is not grounds for an injunction. *Park Village*, 636 F.3d at 1160; *see* Dkt. # 35. The court need not address the merits of defendant's affirmative defense of truth.

**B.     Conclusion**

Having found that plaintiffs are not likely to succeed on the merits, the court need not analyze the remaining factors for preliminary injunction. For all the foregoing reasons, the court DENIES plaintiffs' motion for preliminary injunction.

Dated this 13th day of March, 2012.

*[signature]*

The Honorable Richard A. Jones
United States District Judge