HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AR PILLOW INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MAXWELL PAYTON, LLC, et al.,<br><br>　　　　Defendants. | CASE NO. C11-1962RAJ<br><br>ORDER GRANTING SPECIAL MOTION TO STRIKE PURSUANT TO WASHINGTON ANTI-SLAPP ACT |

**I.  INTRODUCTION**

This matter comes before the court on the special motion to strike filed by Defendants Maxwell Payton, LLC, Annette Cottrell, and Jared Pfost. Dkt. # 43. Defendants seek to strike Plaintiffs' state law claims for unfair competition,[1] defamation, and tortious interference. Plaintiffs AR Pillow Inc. and Elizabeth Goutevenier oppose the motion. On August 10, 2012, Plaintiffs moved the court for an order striking the Anti-SLAPP motion. Dkt. # 51. The court DENIES Plaintiffs' motion to strike.[2] Having

---

[1] On June 4, 2012, Plaintiffs filed a motion for extension of time to address their unfair competition claim and to obtain a signature. Dkt. # 47. Defendants did not oppose this motion, and the court GRANTS this motion. On June 7, 2012, Plaintiffs withdrew their unfair competition claim under RCW 19.86.020. Dkt. # 48. Accordingly, the only claims at issue in Defendants' motion are defamation and tortious interference.

[2] In their motion, Plaintiffs argue that Defendants did not comply with the timing rules set forth in "RCW 4.24.535(5)(a)." Dkt. # 51. However, the text of that statute specifically provides that "[a] hearing shall be held on the motion not later than thirty days after the service of the motion *unless the docket conditions of the court require a later hearing*." 4.24.525(5)(a) (emphasis

ORDER – 1

considered the memoranda, exhibits, oral argument, and the record herein, the court GRANTS Defendants' special motion to strike Plaintiffs' state law claims.

## II.   BACKGROUND

Ms. Goutevenier started AR Pillow in 2007 to help prevent harm associated with infant reflux. Dkt. # 42 (First Am. Compl.) ¶ 7. Defendant Cottrell is the owner of Defendant Maxwell Payton, LLC, which she formed to provide information about infant health and parenting issues through the website pollywogbaby.com, such as infant reflux. *Id.* at ¶¶ 6, 8; Dkt. # 44 (Cottrell Decl.) ¶ 2. Maxwell Payton also provides reviews of infant health and safety products, and it sells products such as foam wedge pillows that could assist with infant reflux and other problems. Dkt. # 44 (Cottrell Decl.) ¶ 2. Through Maxwell Payton, Cottrell sold the AR Pillow from October 2005 to December 2008. *Id.* She stopped selling the AR Pillow based on concerns regarding the AR Pillow's design. *Id.* Cottrell wrote a critical review of the AR Pillow, and that review forms the basis of part of Plaintiffs' law suit, filed on November 23, 2011. On May 17, 2012, Defendants filed the present special motion to strike pursuant to the Washington Act Limiting Strategic Lawsuits Against Public Participation (the "Act") in response to Plaintiffs' First Amended Complaint.

## III.   DISCUSSION

**A.   The Act**

For many years, the Act intended to address lawsuits brought primarily to chill the valid exercise of the constitutional rights of free speech and petition for redress. RCW 4.24.510. In 2010, the Washington State Legislature revised the Act by not only broadening the scope of the protected communication, but creating an efficient, uniform, and comprehensive method for speedy adjudication of lawsuits targeting persons communicating on matters of public or governmental concern. RCW 4.24.525; Senate

---

added). Here, the court's docket conditions required a later hearing. Accordingly, the court DENIES Plaintiffs' motion to strike.

ORDER – 2

Bill 6395, Laws of 2010, Ch. 118, § 1.  These amendments are patterned after California's anti-SLAPP act and expand the types of speech protected to five categories. Because the Act is closely modeled after the California statute, courts have applied California law as persuasive authority in interpreting the Act.  *See*, *e.g.*, *Castello v. City of Seattle*, No. C10-1456MJP, 2010 WL 4857022, at *4 (W.D. Wash. 2010); *Aronson*, 738 F. Supp. 2d at 1110.  The court is to liberally construe and apply the Act in order to effectuate its general purpose of protecting participants in public controversies from an abusive use of the courts.  *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1110 (W.D. Wash. 2010).

**B.    Legal Standard**

There are two stages the court must analyze to determine whether the moving party will prevail on a special motion to strike.  The moving party has the initial burden of showing by a preponderance of the evidence that the claim is based on an action involving public participation and petition.  RCW 4.24.525(4)(b).  If the moving party meets this burden, the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim.  *Id.*  If the responding party meets this burden, the court shall deny the motion.  *Id.*  Although the revised Act is modeled after the California law, Washington applies a higher burden at the second stage. RCW 4.24.525(4)(b) ("clear and convincing evidence of a probability of prevailing").

The Ninth Circuit, applying California's statute, has noted that the second stage determines whether the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010). "Such a test is similar to one courts make on summary judgment, though not identical. Thus, if a plaintiff has stated a legal claim but has no facts to support it, a defendant could prevail on an anti-SLAPP motion, though he would not have been able to win a motion to

ORDER – 3

dismiss." *Id.* The court also noted that it does not weigh the credibility or comparative probative strength of competing evidence, but should grant the motion if, as a matter of law, the moving party's evidence supporting the motion defeats the responding party's attempt to establish evidentiary support for the claim. *Id.* at 903.

However, in a recent unpublished case, the Ninth Circuit has indicated that with respect to California's statute, if a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, the court should apply Federal Rules of Civil Procedure 8 and 12, but if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment. *Z.F. v. Ripon Unified Sch. Dist.*, Case No. 11-15377, 2012 WL 1857521, *1 (9th Cir. 2012). Other courts applying the California statute that have come to similar conclusions apply the *Erie* doctrine. *See e.g.*, *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982-84 (C.D. Cal. 1999). The *Rogers* court reasoned that where a special motion to strike only alleges legal deficiencies, imposing standards that puts a more onerous burden on the nonmoving party would conflict with Rules 8 and 12. *Id.* at 982-83.

Here, Defendants make the special motion to strike based on Plaintiffs' failure of proof.[3] Accordingly, the court applies the standard articulated in *Hilton* to the Act.

C.    **Plaintiffs' Belated Request for Discovery and to Supplement the Record**

During oral argument, Plaintiffs argued that discovery was automatically stayed when Defendants filed their special motion to strike, and that the court would create a manifest injustice if it granted the motion and held Plaintiffs to a summary judgment standard before discovery could be completed. Plaintiffs' argument is disingenuous for at least two reasons. First, it appears from the docket that discovery has been ongoing and contentious, both before and after Defendants filed the special motion to strike. Dkt.

---

[3] Plaintiffs' surprise that the court would apply a standard similar to summary judgment is bewildering. Defendants' motion specifically relied on evidence outside of the complaint and challenged plaintiff's failure of proof.

ORDER – 4

# 14 (Pls. Mot. To Compel), # 56 (Pls. Mot. To Compel). Additionally, at the hearing, counsel for Plaintiffs indicated that he had available expert testimony and at least some damages information, but inexplicably failed to provide such information to the court. Plaintiffs also could have put forth a detailed declaration from Ms. Goutevenier, instead of the four sentence declaration provided that vaguely references the allegations in the complaint. Neither party has asked the court to extend discovery, the dispositive motions deadline (which is December 18, 2012), or trial. Indeed, the discovery deadline has now passed. Second, the discovery stay does not apply when a special motion to strike is filed in federal court.

In *Metabolife International, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001), the court addressed whether two provisions of California's anti-SLAPP statute conflicted with the Federal Rules of Civil Procedure or are contrary to *Erie*'s purposes. The *Metabolife* court addressed California Code of Civil Procedure subsections 425.16(f), which provides that an anti-SLAPP motion may be filed within sixty days of the filing of the complaint, and 425.16(g), which provides that the filing of anti-SLAPP motion automatically stays all further discovery until the court rules on the motion. *Id.* "Together, these two subsections 'create a default rule that allows the defendant served with a complaint to immediately put the plaintiff to his or her proof before the plaintiff can conduct discovery.'" *Id.* (quoting *Rogers*, 57 F. Supp. 2d 973, 980 (C.D. Cal. 1999)). The court adopted a district court holding that when the expedited procedure is used in federal court to test a plaintiff's evidence before the plaintiff has completed discovery, it conflicts with Federal Rule of Civil Procedure 56. *Id.* Quoting and adopting the district court, *Metabolife* held:

> Section 425.16 limits discovery and makes further discovery an exception, rather than the rule. Rule 56 does not limit discovery. On the contrary, it ensures that adequate discovery will occur before summary judgment is considered.

ORDER – 5

> Because the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court.

*Id.*

Here, the Act has nearly identical provisions to subsections (f) and (g). RCW 4.24.525(5)(a) ("special motion to strike may be filed within sixty days of the most recent complaint") and (5)(c) ("All discovery and pending hearings or motions in the action shall be stayed upon the filing of a special motion to strike"). Accordingly, the Ninth Circuit's holding that the automatic stay of discovery in California's statute does not apply in federal court applies equally to the Act. Additionally, both the Federal Rules of Civil Procedure and the Act provided Plaintiffs an avenue to file a motion requesting additional discovery if they believed they could not adequately respond to the motion. Fed. R. Civ. Proc. 56(d); RCW 4.24.525(5)(c). Plaintiffs failed to do so, and only raised the issue for the first time at the hearing, approximately 6 months after the motion was filed. Having failed to properly file a motion requesting additional discovery, the court will not entertain Plaintiffs' belated oral request at this time.

**D.     Act of Public Participation**

In order to prevail on their initial burden, Defendants must prove by a preponderance of the evidence that Ms. Cottrell's online review of the AR Pillow was "an action involving public participation and petition." RCW 4.24.525(2). An action involving public participation and petition includes, *inter alia*, "[a]ny oral statement made, or written statement or other document submitted, in a place open to the public or a public forum in connection with an issue of public concern . . . ." RCW 4.24.525(2)(d).

As a preliminary matter, Plaintiffs do not dispute whether the particular speech in this case was made in a public forum or whether the statement was written. *See Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004). Accordingly, the only issue the court must decide is whether the statement was made in connection with an issue of public concern.

ORDER – 6

Defendants contend that the online review is a matter of public concern because it is a commentary on the quality of a consumer good. Plaintiffs argue that the statements are purely commercial speech not covered by the Act, and that even if the speech was covered, the speech is not a matter of public concern.

With respect to Plaintiffs' argument that the statements are purely commercial speech and therefore not covered by the Act, Plaintiffs rely on the commercial speech exemption under the California law, codified in section 425.17(c). However, Washington has not codified a similar commercial speech exemption.

Nevertheless, preceding the enactment of section 425.17, questions arose about whether advertising statements concerning commercial products could qualify as free speech in connection with a public issue. *Metcalf v. U-Haul Int'l, Inc.*, 13 Cal. Rptr. 3d 686, 689 (Cal. Ct. App. 2004) (citing *Nagel v. Twin Lab., Inc.*, 109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420 (Cal. Ct. App. 2003), *Consumer Justice Ctr. v. Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595, 132 Cal. Rptr. 2d 191 (Cal. Ct. App. 2003), and *DuPont Merck Pharm. Co. v. Superior Court*, 92 Cal. Rptr. 2d 755 (Cal. Ct. App. 2000)). To correct what the legislature perceived as a "disturbing abuse of section 425.16," the legislature enacted section 425.17. *Id.*; *see also* 2003 Cal. Legis. Serv. Ch. 338 (S.B. 515) (West) ("This bill would provide that certain actions are not subject to a special motion to strike, as specified, including, but not limited to, any action brought solely in the public interest or on behalf of the general public, if specified conditions exist."). The pre-section 425.17 cases did not hold that purely commercial speech is exempted or not covered by the statute. Rather, they address whether the commercial speech concerned a matter of public interest to bring the speech within the protection of the statue. *See e.g., Nagel*, 109 Cal. App. 4th at 46-47 (analyzing whether commercial speech of a list of ingredients on a label was a matter in connection with a public issue); *Consumer Justice Ctr.*, 107 Cal.

ORDER – 7

App. 4th at 600-01 (analyzing whether purely commercial speech concerns a matter of public interest within the meaning of section 425.16).

Plaintiffs rely on three pre-section 425.17 cases for the proposition that "[s]tatements about a particular product are directed primarily at private commercial interests and do not generally involve issues that are 'public' concerns." Dkt. # 46 at 3 (citing *Commonwealth Energy Corp. v. Investor Data Exch., Inc.*, 110 Cal. App. 4th 26, 34-35 (2003), *Nagel*, 109 Cal. App. 4th at 50-51, and *Consumer Justice Ctr.*, 107 Cal. App. 4th at 601). These three cases involved situations in which companies attempted to advance or promote their own products and services for sale to increase their own private profits. Such speech is based on the company or manufacturer's private interest of increasing the sales of their products, not the public interest as contemplated by California's statute and the Act.

The nature of Ms. Cottrell's speech is fundamentally different here. Ms. Cottrell formed Maxwell Payton to provide information about infant health and parenting issues. Dkt. # 44 (Cottrell Decl.) ¶ 2. Her company offers infant reflux support information, reviews of infant health and safety products, and products such as foam wedge pillows that might assist others dealing with infant health issues and other problems. *Id.* Maxwell Payton does not and has never manufactured its own foam sleeping wedges. *Id.* Rather, her company offers wedges manufactured by others for sale on pollywogbaby.com. *Id.* Maxwell Payton offered the AR Pillow for sale from October 2005 to December 2008, but ceased making Plaintiffs' product available based on her concerns regarding the AR Pillow design. *Id.* Ms. Cottrell provided the following critique of the AR Pillow for potential AR Pillow consumers visiting her website:

> The AR pillow has it's [sic] harness at the base of the wedge so your baby's head and back rest on the wedge but his bottom and legs are actually on the crib mattress. Because of this he can only be on his back in the Baby AR Pillow. All three wedges are 30 degree wedges but your baby's legs will be on the same plane as his body with the Tucker Wedge and RESQ wedge as

ORDER – 8

> opposed to being flexed or bent on the AR Pillow. For babies with severe reflux the legs should not be flexed because that can increase refluxing. Leg flexing will also decrease oxygenation so if you have a preemie or baby with aspirational concerns be sure and get a Tucker wedge or RESQ wedge. Both the Tucker Wedge and the RESQ wedge will put your baby in a secure upright position and help reduce painful night wakings.

Dkt. # 1 (Compl.), Ex. 2. Here, Ms. Cottrell provides a general warning to consumers visiting her website regarding her concerns with the performance of another company's product. *See N.Y. Studio, Inc. v. Better Bus. Bureau of Alaska, Or., & W. Wash.*, Case No. C11-5012RBL, 2011 WL 2414452, at *4 (W.D. Wash. 2011) (press release was a matter of public concern because it was a general caution to consumers, and multiple media outlets investigated the matter on their own); *see also Wilbanks*, 121 Cal. App. 4th at 899–900 (statements on consumer watchdog website critical of a broker were considered consumer protection information because they were a warning not to use broker's services and directly connected to an issue of public concern); *Paradise Hills Assoc. v. Procel*, 235 Cal. App. 3d 1528, 1544 (1991) (members of the public "clearly have an interest in matters which affect their roles as consumers"). The court finds that Ms. Cottrell's online product review about the quality of the AR Pillow was a matter of public concern.

Defendants have met their burden of showing by a preponderance of the evidence that Ms. Cottrell's online product review of the AR Pillow was a statement involving public participation and petition. Under the Act, the burden shifts to Plaintiffs to show by clear and convincing evidence a probability of prevailing on their claims of defamation and tortious interference.

**E.    Defamation**

A plaintiff claiming defamation must establish four elements: (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. *Mohr v. Grant*, 153 Wash. 2d 812, 822 (2005). Plaintiffs fail to meet their burden because they have not demonstrated

ORDER – 9

that they can prove by clear and convincing evidence all of the required elements of their defamation claim.[4]  Plaintiffs do not provide anything more than mere conclusions for three of the four elements, and for this reason alone, the court finds that Plaintiffs have not met their burden.  Nevertheless, the court will address the first element of falsity.

Plaintiffs contend that the online review available on the Maxwell Payton website suggested "that babies can *only* be placed with bent legs on the AR Pillow."  Dkt. # 46 at 7 (emphasis in original).  However, this statement does not actually appear in the online review.  Rather, the review states that the infant "can only be on his back in the Baby AR Pillow.  All three wedges are 30 degree wedges but your baby's legs will be on the same plane as his body with the Tucker Wedge and RESQ wedge as opposed to being flexed or bent on the AR Pillow."  Dkt. # 1 (Compl.), Ex. 2.  Regardless, Plaintiffs have not provided the court with any evidence to demonstrate the truth or falsity of the actual statements made by Defendants.  Plaintiffs have failed to meet their burden by clear and convincing evidence that they would prevail on the falsity element of the defamation analysis.

F.     **Tortious Interference with a Contract or Business Expectancy**

To satisfy a claim of tortious interference, Plaintiffs bear the burden of proving:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash. 2d 342, 351 (2006).

In their response to the special motion to strike, Plaintiffs contend that their tortious interference claims are rooted in Defendants' unpermitted use of AR Pillow's federally registered trademarks.  However, in their first amended complaint, Plaintiffs'

---

[4] The only evidence submitted by Plaintiffs is a declaration from Ms. Goutevenier providing five conclusory sentences.

ORDER – 10

1  tortious interference claim is rooted in "the publication of falsehood to third parties, *infra*,
2  and/or the infringement of Plaintiffs' trademarks." Dkt. # 42 (First Am. Compl.) ¶ 38.
3  Regardless of the basis for Plaintiffs' tortious interference claim, Plaintiffs simply
4  conclude, without additional evidence, that the facts alleged in the complaint and
5  amended complaint satisfy all the elements of tortious interference:

> The facts alleged in the Complaint (Dkt No. 1) and the subsequent Amended Complaint (Dkt. No. 42) satisfy all of these elements. At all relevant times, AR Pillow has had valid business expectancies from their clientele, as numerous consecutive months of sustained profits had established. Declaration of Elizabeth Goutevenier. Defendant Cottrell, by virtue of her previous affiliation as a point of sale for AR Pillow, had knowledge of the relationship between AR Pillow and its clientele. Id. Defendants' intentional, continued, and unsanctioned use of the federally-registered AR Pillow mark – as alleged (Dkt. No. 42) – has constituted their use of improper means. [These means are improper because they are unlawful under the Lanham Act].

Dkt. # 46 at 7. Ms. Goutevenier's declaration merely provides conclusory sentences:

> (1) At all relevant times, AR Pillow has had valid business expectancies from their clientele, as numerous consecutive months of sustained profits had established.
> (2) Defendant Cottrell, by virtue of her previous affiliation as a point of sale for AR Pillow, had knowledge of the relationship between AR Pillow and its clientele.
> (3) Defendants' conduct has caused me and my business damages – specifically, Defendants [sic] interference significantly reduced revenues to AR Pillow's business.
> (4) In terms of chronology, these reductions in revenue tie strongly to Defendants' activities as alleged in the Amended Complaint.

Dkt. # 48 (Goutevenier Decl.), Ex. 1 at ¶¶ 1–4. These four sentences are insufficient to meet Plaintiffs' burden to show by clear and convincing evidence the probability of prevailing on the tortious interference claim.[5]

---

[5] The court notes that even if it had found that Plaintiffs met their burden, the court would still find that their defamation and tortious interference claims were barred by the statute of

ORDER – 11

### G.     Attorney's Fees, Statutory Fees and Costs

The Act provides the moving party with an award of attorney's fees and costs, plus a statutory award of $10,000, should the moving party prevail on the special motion to strike.  RCW 4.24.525(6)(a)(i), (ii).  Additional sanctions may be awarded to deter repetitive conduct.  RCW 4.24.525(6)(a)(iii).  However, if the court finds that the special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court will award the prevailing responding party costs, attorney's fees, and $10,000.  RCW 4.24.525(6)(b).

The court awards the three Defendants $10,000 each (for a total of $30,000) in statutory fees, reasonable attorney's fees, and costs.  *See Castello v. City of Seattle*, Case No. C10-1457 MJP, 2010 WL 4857022, *11 (W.D. Wash. 2010) (awarding $10,000 statutory fees for each defendant who was a moving party).  Defendants shall submit their requests for costs and reasonable attorney's fees within 7 days of this order.  Plaintiff shall submit any response to those requests within 7 days thereafter.

### IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' special motion to strike Plaintiffs' state law claims.  Dkt. # 43.  The Clerk is DIRECTED to terminate

---

limitations. Plaintiffs reviewed one of Ms. Cottrell's critiques of the AR Pillow on April 2, 2008 that included a critique that the "AR Pillow is designed so that your baby's torso rests on it, while his bottom and legs extend off it and rest on the actual mattress" and that the infant "can only sleep on his back on the AR Pillow." Dkt. # 44-4 at 3 (Cottrell Decl.) ¶ 8, Ex. 4. Plaintiffs argue that the discovery rule tolled the statute of limitations until Plaintiffs had notice that they were damaged by the review in 2011 when they learned that a customer cancelled her order for an AR Pillow based on unfavorable information she learned from Defendants' website. The court assumes, without deciding, that the discovery rule applies to defamation and tortious interference claims. Under the discovery rule, the cause of action accrues when the plaintiff knew, or in the exercise of diligence should have known, the facts that give rise to the claim. *Parkridge Assoc., Ltd. v. Ledcor Indus., Inc.*, 113 Wn. App. 592, 608, 54 P.3d 225 (2002). The gravamen of Plaintiffs' legal claims is the allegedly false statements in the review, which Plaintiffs had notice of on April 2, 2008. Accordingly, Plaintiffs' claims for defamation (2-year statute of limitation) and tortious interference (3-year statute of limitation) are time-barred. *See* RCW 4.16.080; RCW 4.16.100.

ORDER – 12

plaintiffs' motion for extension of time and motion to strike the anti-SLAPP motion. Dkt. ## 47, 51.

DATED this 4th day of December, 2012.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 13